| | |
|---|---|
| _____ ) | |
| MARCELO SANDOVAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 16-1013 (ABJ) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Marcelo Sandoval, proceeding *pro se*, brought this action under the Freedom of Information Act ("FOIA") and the Privacy Act against defendants United States Department of Justice ("DOJ"), the Executive Office for United States Attorneys ("EOUSA"), the United States Attorney's Office for the Central District of Illinois ("USAO CDIL"), the Federal Bureau of Investigation ("FBI"), and the Federal Bureau of Prisons ("BOP"), seeking both the production of documents about himself and the correction of inaccurate records. Compl. [Dkt. # 1] ¶¶ 4–9. Defendants filed a motion to dismiss and for summary judgment; they moved to dismiss plaintiff's FOIA claim against BOP and his claim under the Privacy Act against all defendants, and they moved for summary judgment on plaintiff's FOIA claims against the remaining defendants. Defs.' Mot. to Dismiss & for Summ. J. [Dkt. # 17] ("Defs.' Mot."); Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. # 17-2] ("Defs.' Mem."). Plaintiff filed an opposition on October 20, 2017, but in it, he only challenged the adequacy of defendants' searches and the use of certain FOIA Exemptions. Reply Mot. for Pl. to Defs.' Mot. [Dkt. # 20] ("Pl.'s Opp.").

Because plaintiff has not opposed defendants' motion to dismiss the FOIA claim against BOP and the Privacy Act claims against all defendants, the Court will grant that portion of the

motion as conceded. The Court will grant defendants' motion for summary judgment on the FOIA claim against the FBI, but it will deny the motion as to DOJ, EOUSA, and USAO CDIL at this time.

## BACKGROUND

### I. Plaintiff's FOIA/Privacy Act Requests to the FBI

#### A. Plaintiff's First Request

Plaintiff, who is currently in the custody of BOP in West Virginia, submitted a FOIA/Privacy Act ("FOIPA") request to the FBI on September 7, 2015, seeking documents related to his alleged activities between 1997 and 2015. Defs.' Statement of Material Facts as to Which There is no Genuine Issue [Dkt. # 17-1] ("Defs.' SOF") ¶ 2; Decl. of David M. Hardy [Dkt. # 17-3] ("Hardy Decl.") ¶ 5; Ex. A to Hardy Decl. [Dkt. # 17-3] ("First FBI FOIPA Request"). Specifically, he requested "[d]ocuments supporting that I am a member of the Mexican Mafia & was supplying information to the government. And or produce documents that refute the above." Defs.' SOF ¶ 2; First FBI FOIPA Request.

The FBI responded to plaintiff's FOIPA request by letter dated September 28, 2015, notifying him that a search of the FBI's Central Record System failed to locate any records responsive to his request, and that he had the right to appeal. Defs.' SOF ¶ 3; Ex. B to Hardy Decl. [Dkt. # 17-3]. On October 5, 2015, plaintiff filed an administrative appeal with the Office of Information Policy, which affirmed the FBI's action on plaintiff's FOIPA request on October 30, 2015. *See* Defs.' SOF ¶ 4; Ex. C to Hardy Decl. [Dkt. # 17-3]; Ex. E to Hardy Decl. [Dkt. # 17-3].

### B.    Plaintiff's Second Request

On October 20, 2015, plaintiff submitted another FOIPA request to the FBI, again seeking

information about himself from 1997 to 2015.  Defs.' SOF ¶ 5; *see* Hardy Decl. ¶ 10; Ex. F to

Hardy Decl. [Dkt. # 17-3] ("Second FBI FOIPA Request").  Plaintiff specifically requested:

> [D]ocuments proving my actual innocence of the Kidnapping described in
> USA v. Sandoval, 99-cr-40019-JBM (C.D. Ill/Rock Island) & Inaccurate
> records depicting Sandoval as a member of the Mexican Mafia & as a
> governmental informant, both are untrue, also documents concerning
> government witnesses against Sandoval convicted of violence &
> committing perjury at Sandoval's jury trial.

Defs.' SOF ¶ 5; Second FBI FOIPA Request.  The FBI acknowledged receipt of plaintiff's request

on December 3, 2015, and it informed plaintiff that it was in the process of searching its Central

Records System for information responsive to his request.  Defs.' SOF ¶ 6; *see* Hardy Decl. ¶ 11;

Ex. G to Hardy Decl. [Dkt. # 17-3].  On December 14, 2015, the FBI responded to plaintiff's

request by letter, stating that the FBI's search failed to locate any responsive records, and that he

had the right to appeal.  Defs.' SOF ¶ 7; *see* Hardy Decl. ¶ 12; Ex. H to Hardy Decl. [Dkt. # 17-

3].

On September 28, 2016, after plaintiff filed this action in federal court, the FBI sent a letter

to plaintiff, informing him that eleven pages of records had been reviewed, and it simultaneously

released five pages in full or in part.  Defs.' SOF ¶ 7; *see* Hardy Decl. ¶ 14; Ex. I to Hardy Decl.

[Dkt. # 17-3].  Although all of the records would have been withheld in full pursuant to Privacy

Act Exemption j(2), the documents "were processed pursuant to the FOIA to allow [p]laintiff the

greatest degree of access to the records," so only some information was withheld pursuant to FOIA

Exemptions 6, 7(C), 7(D), and 7(F).  Hardy Decl. ¶ 14; Ex. I to Hardy Decl. [Dkt. # 17-3].

Plaintiff administratively appealed this agency action on October 11, 2016, Hardy Decl. ¶ 15; Ex. J to Hardy Decl. [Dkt. # 17-3], but the agency's action was upheld. Hardy Decl. ¶ 17; Ex. L to Hardy Decl. [Dkt. # 17-3].

## II.    Plaintiff's Request to BOP

On October 15, 2015, plaintiff sent a FOIA request to BOP. Defs.' SOF ¶ 9.[1]  BOP responded to plaintiff on November 13, 2015, informing him that it had found his Presentence Investigation Report (totaling 23 pages). *Id.* However, pursuant to BOP Program Statement 1351.05, inmates are prohibited from obtaining photocopies of their Presentence Reports while incarcerated, so BOP informed plaintiff that his report would be made available through his unit team. *Id.* BOP notified plaintiff of his appeal rights, but plaintiff did not appeal its determination. *Id.* ¶ 10.

## III.    Plaintiff's FOIPA Requests to EOUSA and USAO CDIL

On August 31, 2015, plaintiff sent a FOIPA request to EOUSA asking for access to "any and all records . . . that relate[] to and/or make[] reference to Sandoval," "in and around 1997-2015," including "[i]naccurate records, depict[ing] Sandoval as a 'Mexican Mafia Member' and other false records such as Sandoval working with the government." Decl. of David Luczynski [Dkt. # 17-5] ("Luczynski Decl.") ¶ 4; Ex. A to Luczynski Decl. [Dkt. # 17-5] ("Ex. A").

Plaintiff submitted another FOIPA request to USAO CDIL dated September 11, 2015. Luczynski Decl. ¶ 5; Ex. B to Luczynski Decl. [Dkt. # 17-5] ("Ex. B"). He sought records from

---

1      The language of plaintiff's FOIA request to BOP is not cited in defendants' statement of facts, motion, or the declaration of Dominick Desanto, despite Mr. Desanto's statement that "a true and accurate copy of Mr. Sandoval's FOIA request" was attached to his declaration. *See* Decl. of Dominick Desanto [Dkt. # 17-4] ("Desanto Decl.") ¶ 3. However, this information is irrelevant since the Court will grant defendants' motion to dismiss the FOIA claim against BOP in light of plaintiff's failure to respond to defendants' motion to dismiss that claim for failure to exhaust administrative remedies.

"case: #99-40019-(Central District of Illinois)" between 1997 and 2015, "[s]howing that Sandoval is a member of the Mexican Mafia & that Sandoval was working for the FBI/DEA. And of [d]ocuments refuting supra." Luczynski Decl. ¶ 5; Ex. B. USAO CDIL advised plaintiff to direct all future correspondence to EOUSA since EOUSA handles all FOIA requests involving U.S. Attorneys' Offices, and it sent a letter to EOUSA on September 23, 2015, enclosing a copy of plaintiff's FOIPA request for processing. Decl. of Julie Leeper [Dkt. # 17-6] ("Leeper Decl.") ¶ 3. EOUSA informed plaintiff on October 9, 2015, that it had received the request he sent to USAO CDIL, and EOUSA assigned it FOIA No. 2015-04040. Luczynski Decl. ¶ 7; Ex. D. to Luczynski Decl. [Dkt. # 17-5].

On October 20, 2015, plaintiff sent a third request to EOUSA, seeking the following:

> I request specific documents proving my actual innocence of the kidnapping described in USA v. Sandoval, #99-cr-40019-JBM (C.D. Ill./Rock Island) & inaccurate records dep[icting] Sandoval as a member of the Mexican Mafia & government informant, which are both untrue, [and] also concerning government witnesses against Sandoval convicted of violence & committing perjury at Sandoval's jury trial.

Ex. C to Luczynski Decl. [Dkt. # 17-5] ("Ex. C"); Luczynski Decl. ¶ 6. This request was also limited to the 1997 through 2015 time frame. *See* Ex. C.

On approximately June 13, 2016, USAO CDIL received plaintiff's request after it was processed by EOUSA,[2] and it informed EOUSA that it was unable to locate any responsive documents. Leeper Decl. ¶¶ 4, 13.

EOUSA responded to request No. 2015-04040 on September 16, 2016, informing plaintiff that his request had been processed and no responsive records had been found. Luczynski Decl. ¶ 10; Ex. G to Luczynski Decl. [Dkt. # 17-5]. On October 3, 2016, plaintiff appealed EOUSA's determination, Luczynski Decl. ¶ 11; Ex. H to Luczynski Decl. [Dkt. # 17-5], and on December 15, 2016, the Office of Information Policy affirmed EOUSA's action on his request. Luczynski Decl. ¶ 12; Ex. J to Luczynski Decl. [Dkt. # 17-5].

Plaintiff filed this action *pro se* on May 26, 2016, Compl., and defendants answered the complaint on February 22, 2017. Answer [Dkt. # 11]. On June 22, 2017, defendants filed this motion to dismiss and for summary judgment. Defs.' Mot. The Court notified plaintiff that the Court "may grant [defendants'] motion and dismiss the case if [he] fail[ed] to respond," and ordered him to respond by July 26, 2017. Order [Dkt. # 18], citing *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988) (holding that a district court "must take pains to advise a *pro se* party of

---

2      It is unclear which FOIPA request USAO CDIL had received at this point in time, and on what date USAO CDIL actually received it. USAO CDIL's declarant stated that, on September 23, 2015, she sent one of plaintiff's requests to EOUSA "for processing," and that on June 13, 2016, USAO CDIL "received Sandoval's FOIA request which had been processed by EOUSA." Leeper Decl. ¶¶ 3–4. This sentence structure implies that the same request that USAO CDIL initially sent to EOUSA made its way back to USAO CDIL after EOUSA processed it. However, in describing USAO CDIL's search for responsive records, its declarant cited to language contained in plaintiff's third FOIPA request, which was sent in October 2015. *See* Leeper Decl. ¶ 5. In addition, Ms. Leeper stated that USAO CDIL "received" plaintiff's request on June 13, 2016, *id.* ¶ 4, but she also averred that the search for documents responsive to plaintiff's request took place between January 4, 2016 and June 13, 2016. *Id.* ¶¶ 10–12. Further, she said that she "advised EOUSA that [she] was unable to locate documents responsive to [plaintiff's] request" on June 13, 2016. *Id.* ¶ 13. Given this illogical chronology, it is unclear to the Court what dates are accurate and which request USAO CDIL was responding to when it conducted its search for responsive records.

the consequences of failing to respond to a dispositive motion" and that the notice "should include an explanation that the failure to respond . . . may result in the district court granting the motion and dismissing the case"). The Court issued a subsequent warning to plaintiff that if he did not respond to defendants' motion to dismiss and for summary judgment by October 24, 2017, "the Court will grant the motion to dismiss as conceded and accept any facts set forth in defendants' motion for summary judgment as true, and it may decide the matter in defendants' favor without the benefit of plaintiff's position." Order [Dkt. # 19]. Plaintiff opposed the motion on October, 20, 2017. *See* Pl.'s Opp.

**STANDARD OF REVIEW**

**I.      Motion to Dismiss Standard**

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

**A.      Subject Matter Jurisdiction**

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v.*

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

### B.    Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  556 U.S. at 678.  And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all

inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See Kowal*, 16 F.3d at 1276; *see also Browning*, 292 F.3d at 242. In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## II. Motion for Summary Judgment Standard

In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate. *Weisberg v. DOJ*, 627 F.2d 365, 371 n.54 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal quotation marks omitted). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"Summary judgment may be granted on the basis of agency affidavits" in FOIA cases, when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013), quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006). However, a plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims about the existence and discoverability

of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

Even if the nonmoving party fails to respond to the motion for summary judgment, or portions thereof, a court cannot grant the motion for the reason that it was conceded. *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). That is because the "burden is always on the movant to demonstrate why summary judgment is warranted." *Id.*, quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring). A district court "must determine for itself that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, and then 'should state on the record the reasons for granting or denying the motion.'" *Id.* at 508–09, quoting Fed. R. Civ. P. 56(a).

## ANALYSIS

### I. Plaintiff's Privacy Act claims against defendants will be dismissed.

"The Privacy Act imposes a set of substantive obligations on agencies that maintain systems of records . . . [and] requires agencies to entertain requests for amendment of records that are not 'accurate, relevant, timely, or complete.'" *Skinner v. DOJ & BOP*, 584 F.3d 1093, 1096 (D.C. Cir. 2009), quoting 5 U.S.C. § 552a(d)(2). If an agency determines "not to amend an individual's record in accordance with his request," or "refuses to comply with an individual's request" to "gain access to his record or to any information pertaining to him which is contained in the [record] system," the individual "may bring a civil action against the agency, and the district courts of United States shall have jurisdiction." 5 U.S.C. §§ 552a(d), (g)(1). However, this civil remedy is not available unless a plaintiff has exhausted his administrative remedies. *See id.*; *Haase v. Sessions*, 893 F.2d 370, 373 (D.C. Cir. 1990) ("[A]ccording to the statutory language, [a

plaintiff] must initially seek an amendment or access from the agency and even seek review within the agency before coming to court.").

The Privacy Act "also permits agencies to exempt certain of their systems of records from many of the obligations" the Act imposes. *Skinner*, 584 F.3d at 1096, citing 5 U.S.C. § 552a(j). BOP exempted its Inmate Central Records System from Section 552a(d)'s amendment provision in 1976, and this "exemption prevents [courts] from ordering the amendment of an inmate's records." *Id.* (affirming district court's dismissal of the plaintiff's claim under BOP's exemption for its Inmate Central Records System).

Defendants argue that plaintiff's Privacy Act claim against the FBI should be dismissed because plaintiff has failed to exhaust his administrative remedies since he never sent any request for the amendment of records to FBI. Defs.' Mem. at 14.[3] Further, they maintain that plaintiff's Privacy Act claim against BOP must be dismissed because BOP's Inmate Central Records System is exempt from the Privacy Act. *Id.* Because plaintiff did not address defendants' motion to dismiss the Privacy Act claims in his opposition, *see generally* Pl.'s Opp., the Court will grant defendants' well-founded motion as conceded pursuant to Local Civil Rule 7(b). *See* LCvR 7(b); *Cohen v. Bd. of Trs. of the Univ. of D.C.*, 819 F.3d 476, 480 (D.C. Cir. 2016) (affirming the district court's decision to grant the motion to dismiss as conceded, but holding that to dismiss with

---

3    This is confirmed by a review of the requests themselves. Although both requests to the FBI cite to FOIA and the Privacy Act, neither request actually seeks the correction of specific records. *See* Ex. A to Hardy Decl. [Dkt. # 17-3]; Ex. E to Hardy Decl. [Dkt. # 17-3]. The Court may consider any documents attached to or incorporated by reference in the complaint. *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624. This includes any documents upon which the complaint necessarily relies, even if the document is produced by the defendant in a motion to dismiss. *Hinton v. Corrs. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009), citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) and *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991).

prejudice was an abuse of discretion); *Winston & Strawn, LLP*, 843 F.3d at 508 (concluding that a district court may not grant a motion for summary judgment as conceded, but noting that the "nothing in [the] opinion is meant to address the applicability of Local Rule 7(b) to motions other than motions for summary judgment"). Therefore, the Court will dismiss plaintiff's Privacy Act claims against the FBI and BOP.

That leaves plaintiff's Privacy Act claims against DOJ, EOUSA, and USAO CDIL. *See* Compl. ¶ 2. In his complaint, plaintiff alleges that all defendants – DOJ, EOUSA, FBI, BOP, and USAO CDIL – violated the Privacy Act by intentionally failing to correct plaintiff's "inaccurate specific records." *Id.* Defendants moved to dismiss the Privacy Act claims against FBI and BOP because they were the only two agencies to locate any records responsive to plaintiff's FOIPA requests. *See* Defs.' Mem. at 14. Defendants seem to be arguing that if an agency did not locate any responsive records to the FOIPA request, there could not be any "inaccurate records" to correct under the Privacy Act, and therefore, the complaint fails to state a claim under the Privacy Act. *See id.* But plaintiff's FOIA claim is distinct from his Privacy Act claim, and the production of responsive records under FOIA does not necessarily mean that the same documents would be responsive to a request to correct records under the Privacy Act.

After a review of plaintiff's requests, *see, e.g.*, Ex. A; Ex. B; Ex. C, the Court concludes that plaintiff has failed to exhaust his administrative remedies as to DOJ, EOUSA, and USAO CDIL since none of the requests he sent to the agencies actually sought the amendment of any records.[4] Because the exhaustion requirement under the Privacy Act is jurisdictional, a court may

---

4  The Court notes that plaintiff did not send any requests directly to DOJ, but rather to the "Executive Office of the United States Attorney's, U.S. Dep't of Justice FOIA/PA Unit." *See* Ex. A.

dismiss a claim for failure to exhaust administrative remedies *sua sponte*. *See* 5 U.S.C. §§ 552a(g)(1); *Doe ex rel Fein v. Dist. of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996) (observing that because subject matter jurisdiction cannot be waived, a court is "obliged to address it *sua sponte*" when the parties have failed to do so), citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *see also Stein v. SEC*, No. 15-1560, 2017 WL 3141903, at *3 (D.D.C. July 24, 2017) ("Privacy Act claims are subject to an administrative exhaustion requirement – and exhaustion under the Privacy Act is a jurisdictional requirement."); *Mulhern v. Gates*, 525 F. Supp. 2d 174, 183 (D.D.C. 2007) ("Premature Privacy Act suits are dismissed for lack of subject matter jurisdiction").[5]

Therefore, the Court concludes that it lacks subject matter jurisdiction over plaintiff's Privacy Act claims against DOJ, EOUSA, and USAO CDIL, and it will dismiss the Privacy Act claims against the agencies.

## II.  Plaintiff's FOIA claim against BOP will be dismissed.

Generally, FOIA requesters "must exhaust administrative appeal remedies before seeking judicial redress." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013). In his complaint, plaintiff alleges that he "exhausted all of his Administrative Remedies . . . within the U.S. Dep't of Justice's Components: Defendant: BOP." Compl. ¶ 10.

Defendants argue that plaintiff has not exhausted his administrative appeal remedies since BOP responded to plaintiff's request in a timely fashion, it informed him of his appeal rights, and plaintiff did not file an appeal after he received BOP's FOIA determination. Defs.' Mem. at 3–4.

_____

5    While the exhaustion requirement under the Privacy Act is jurisdictional, the exhaustion requirement under FOIA is not. *See Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (observing "that the exhaustion requirement is not jurisdictional because the FOIA does not unequivocally make it so.").

Because plaintiff does not challenge this contention either, the Court will grant defendants' motion as conceded pursuant to Local Civil Rule 7(b). *See* LCvR 7(b); *Cohen*, 819 F.3d at 480; *Winston & Strawn, LLP*, 843 F.3d at 508.

Therefore, the Court will dismiss plaintiff's FOIA claim against BOP.

**III.   The Court will grant summary judgment in favor of the FBI on plaintiff's FOIA claim, but will deny summary judgment as to DOJ, EOUSA, and USOA CDIL based on the current record.**

FOIA requires the release of government records upon request. Its purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."), citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). The Supreme Court has instructed that "FOIA exemptions are to be narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must first demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005) (citation omitted). Any "reasonably segregable" information in a

responsive record must be released, 5 U.S.C. § 552(b), and "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

Because a fundamental principle behind FOIA "is public access to government documents," courts require "agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), citing *John Doe Agency*, 493 U.S. at 151 and *Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998). Therefore, an agency only "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Id.*, quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Oglesby*, 920 F.2d at 68. Although there "is no requirement that an agency search every record system," an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.

To demonstrate that it has performed an adequate search for responsive documents, an agency must submit a reasonably detailed affidavit describing the search. *Oglesby*, 920 F.2d at 68 (finding summary judgment improper where agency's affidavit lacked sufficient detail). An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Id.*; *see also Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 92 (D.D.C. 2009) (finding declaration deficient where it failed to detail the types of files searched, the filing methods, and the search terms used). However, agency affidavits that "do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the

procedures utilized" are insufficient to support summary judgment. *Weisberg*, 627 F.2d at 371; *see also Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994) (concluding that an agency affidavit must describe "what records were searched, by whom, and through what process"). Moreover, conclusory assertions about the agency's thoroughness are insufficient. *Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007).

"Agency affidavits are accorded a presumption of good faith," *Safecard Servs., Inc.*, 926 F.2d at 1200, which can be rebutted with "evidence of agency bad faith," *Military Audit Project*, 656 F.2d at 738, or when "a review of the record raises substantial doubt" that certain materials were overlooked despite well-defined requests. *Valencia-Lucena*, 180 F.3d at 326, citing *Founding Church of Scientology*, 610 F.2d at 837; *see also Truitt*, 897 F.2d at 542 ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").

While EOUSA and USAO CDIL submitted two declarations in an attempt to meet their burden with regard to the adequacy of their searches, the declarations do not inspire confidence that the agencies conducted searches that were reasonably calculated to uncover all relevant documents. However, the declaration submitted by the FBI does sufficiently describe an adequate search. Therefore, the Court will remand the case to EOUSA and USAO CDIL.[6]

**A.      The declarations describing the EOUSA and USAO CDIL searches have several deficiencies.**

The EOUSA provided the declaration of David Luczynski to describe its search, while USAO CDIL proffered the declaration of Julie Leeper. Mr. Luczynski is an Attorney Advisor who is responsible for acting as a liaison between various divisions and offices of DOJ in responding

_____

6      Because EOUSA and USAO CDIL are both components of DOJ, DOJ will remain a defendant in this action as well.

to FOIA and Privacy Act requests. Luczynski Decl. ¶ 1. Ms. Leeper is a legal assistant who serves as the FOIA and Privacy Act Coordinator for USAO CDIL, and who coordinates with EOUSA in response to all FOIA and Privacy Act requests for USAO CDIL. Leeper Decl. ¶ 1.

EOUSA's declarant averred that each U.S. Attorney's Office maintains the case files for criminal matters prosecuted by that office, so, upon receiving plaintiff's request, EOUSA forwarded the request to EOUSA's FOIA contact in the Central District of Illinois. Luczynski Decl. ¶ 13. He stated that the FOIA contact "began a systematic search for records on 'Marcelo Sandoval' to determine the location of any and all files relating to plaintiff in order to comply with his request," which included a search for records from the case file in Case # 99-cr-40019-JBM. *Id.* The declarant referred to Ms. Leeper's declaration for further details about the searches conducted. *Id.*

Ms. Leeper provided details about USAO CDIL's computerized docketing/case management system known as LIONS, and she also stated that files could be located in any USAO CDIL office as well as the Federal Records Center in Chicago. Leeper Decl. ¶ 8. From January 4, 2016, to June 13, 2016, "emails were sent to employees of the CDIL . . . advising them to complete a search for responsive records." *Id.* ¶ 10. Ms. Leeper herself "performed a physical search for opened and closed files, search for Federal Records Center files, the LIONS system, Windows, Outlook, PACER (court's website), and archived electronic computer files, for responsive documents relating to Sandoval, specifically case number 99-CR-40019." *Id.* ¶ 11.

The declarant stated that she located "boxes of files relative to Sandoval, case number 99-CR-40019, as well as electronically stored files," but that after reviewing the documents, she did not find any responsive documents. Leeper Decl. ¶ 12. She discussed this conclusion with the Assistant U.S. Attorney who handled plaintiff's case and "he advised [her] that there were no

documents responsive to Sandoval's request." *Id.* At that point, on June 13, 2016, Ms. Leeper advised EOUSA that no responsive documents were found. *Id.* ¶ 13.

The Court has concerns about the declarations provided by EOUSA and USAO CDIL. First, the lack of clarity within the declarations made the task of assessing the adequacy of the search unnecessarily complicated. It appears that plaintiff sent three FOIA requests to EOUSA – one on August 31, 2015, one on September 11, 2015,[7] and one on October 20, 2015 – but only the request sent in September was assigned a Request Number. *See* Luczynski Decl. ¶¶ 4–7. EOUSA informed plaintiff on October 9, 2015, that this FOIA request had been assigned FOIA No. 2015-04040. Luczynski Decl. ¶ 7. Plaintiff did not submit his third request until ten days later. *See id.* ¶ 6. Yet, in describing her search for records, USAO CDIL's declarant cited the language from plaintiff's third request. *See* Leeper Decl. ¶ 5; *see also* Ex. C.[8] The Court recognizes that the three requests call largely for the same information, but the declarations should make it clear if all three were consolidated under a single request number, or if requests one and two were considered to have been superseded by the slightly broader third request.

Turning to the searches themselves, the Luczynski declaration does adequately explain why the request was assigned to USAO CDIL, and the Leeper declaration sufficiently describes

---

7    USAO CDIL's declarant stated that USAO CDIL "received" a FOIA request by mail from plaintiff on September 18, 2015, and that she sent a letter to EOUSA on September 23, 2015, enclosing a copy of plaintiff's FOIA request for processing. Leeper Decl. ¶ 3. The copy of the FOIA request provided by EOUSA's declarant is dated September 11, 2015, and it appears to be stamped as received on September 20, 2015, but the stamp is difficult to read. *See* Luczynski Decl. ¶ 5; Ex. B. Despite the date discrepancies, the Court has no reason to doubt that both declarants are referring to the same FOIA request since the request was addressed to the United States Attorney's Office, Central District of Illinois. *See* Ex. B.

8    The declarant stated that USAO CDIL received plaintiff's FOIA request "[o]n or about June 13, 2016," but she also averred that this was the date upon which the search for responsive documents ended, and the date upon which she "advised EOUSA that [she] was unable to locate documents responsive to [plaintiff's] request." Leeper Decl. ¶¶ 4, 10–11, 13. The Court cannot follow this timeline.

the various computer systems that were searched. But, the Leeper declaration, which Mr. Luczynski points the Court to for the "most accurate description of the search," *see* Luczynski Decl. ¶ 13, falls short in a few other respects.

Leeper states that she "performed a physical search for opened and closed files, search for Federal Records Center files, the LIONS system, Windows, Outlook, PACER (court's website), and archived electronic computer files," Leeper Decl. ¶ 11, but she fails to explain why these were the locations searched. *See Oglesby*, 920 F.2d at 68. Further, the declaration asserts that "emails were sent to employees of the CDIL . . . advising them to complete a search for responsive documents," Leeper Decl. ¶ 10, but it does not identify who those employees were and what their responsibilities are, nor does it aver that no other custodians were likely to possess responsive documents, or describe the types of records searched or the search methodology used by the employees. *See Oglesby*, 920 F.2d at 68. Moreover, the declarant states that she searched electronic databases "for responsive documents relating to Sandoval, specifically case number 99-CR-40019," but she does not list the search terms used, and while she states that she personally reviewed the paper and electronic files that were uncovered, she does not describe what she did to search the electronic files. *See* Leeper Decl. ¶¶ 11–12; *see also Oglesby*, 920 F.2d at 68.

Although agency affidavits are afforded a presumption of good faith, that presumption can be rebutted when "a review of the record raises substantial doubt" that certain materials were overlooked. *Valencia-Lucena*, 180 F.3d at 326, citing *Founding Church of Scientology*, 610 F.2d at 837; *see also Truitt*, 897 F.2d at 542 ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."). Because the EOUSA and USAO CDIL declarations lack the necessary specificity and clarity, the Court finds that

summary judgment is inappropriate at this time. Defendants may renew their motion after a revised declaration has been submitted.

## B. The FBI searches were adequate.

To describe its searches for records in this case, the FBI proffered the declaration of David Hardy, the Section Chief of the FBI Record/Information Dissemination Section, Records Management Division. *See* Hardy Decl. ¶ 1. The declarant explained at length the FBI's recordkeeping systems, *see id.* ¶¶ 18–24, and the means by which FBI's staff conducted searches for records responsive to plaintiff's two FOIA requests. *See id.* ¶¶ 25–29. Specifically, the declarant stated that the FBI staff conducted multiple index searches of the Central Records System using variations of plaintiff's name, and ultimately his aliases. *Id.* ¶¶ 26–28. A search conducted after plaintiff filed this lawsuit resulted in the location of eleven pages of responsive records. *See id.* ¶¶ 14, 28. The FBI released five pages in full or in part, and withheld six pages in full pursuant to FOIA exemptions. *Id.* ¶ 14.

Because the FBI's declaration is accorded a presumption of good faith, and it demonstrates with reasonable specificity that the agency's searches were calculated to locate records responsive to plaintiff's FOIA requests, the Court concludes that the FBI's searches were adequate.

## C. The FBI properly withheld information pursuant to Exemptions 7 and 6.

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure would cause one of the enumerated harms. 5 U.S.C. § 552(b)(7); *FBI v. Abramson*, 456 U.S. 615, 622 (1982). The FBI's declarant averred that all of the responsive records were compiled for law enforcement purposes:

> [T]he responsive records herein were compiled during the FBI's investigation of a kidnapping of a third party subject and an investigation of third party subjects concerning gang related activity and possible violations of federal laws. Thus, these records were compiled for law enforcement

> purposes; they squarely fall within the law enforcement duties of the FBI; therefore, the information readily meets the threshold requirement of Exemption (b)(7).

Hardy Decl. ¶ 37. The FBI has therefore met this threshold burden, and the Court concludes that all of the responsive FBI records were compiled for law enforcement purposes, so the question becomes whether the release of the records would cause a harm identified in one of the subsections of Exemption 7.

### 1. Exemption 7(C) and Exemption 6

Defendant maintains that it properly withheld the names and identifying information of the following individuals pursuant to Exemption 7(C) and Exemption 6: "(1) FBI Special Agents and support personnel; (2) third parties of investigative interest; (3) a third party victim; (4) third parties who provided information to the FBI; (5) third parties merely mentioned; (6) local law enforcement personnel; and (7) a non-FBI federal government employee." Defs.' Mem. at 8, citing Hardy Decl. ¶ 35; *see also* Hardy Decl. ¶ 39 n.6 ("The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C).").

Exemption 6 shields from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Because Exemption 7(C) involves a lower threshold than the one set forth in Exemption 6, which requires a "clearly unwarranted invasion" of privacy, *see id.* § 552(b)(6), the Court will address Exemption 7(C) first. *See DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755–56, 763–65 (1989) (comparing Exemption 7(C) and Exemption 6); *see also Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1125 (D.C. Cir. 2004) (deeming "the privacy inquiry of Exemptions 6 and 7(C) to be essentially the same"). And because

the Court concludes that the withheld information is properly exempted pursuant to Exemption 7(C), it need not address whether Exemption 6 would independently justify the FBI withholding the information. *See Simon v. DOJ*, 980 F.2d 782, 785 (D.C. Cir. 1992) (finding that because the information fell within another exemption, the court did not need to address whether Exemption 7(C) would independently justify the withholding of the requested document); *see also Smith v. Sessions*, 247 F. Supp. 3d 19, 26 (D.D.C. 2017) (concluding that the court need not consider Exemption 6 if it has already concluded that Exemption 7(C) applies to the same information).

In determining whether Exemption 7(C) applies to particular information, the Court must balance an individual's interest in privacy against the public interest in disclosure. *See ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). The privacy interest at stake belongs to the individual, not the government agency, *see Reporters Comm.*, 489 U.S. at 763–65, and an individual has a "strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. DOJ*, 968 F.2d 1276, 1282 (D.C. Cir. 1992), quoting *Reporters Comm.*, 489 U.S. at 773. It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

Although plaintiff challenges the redactions under Exemption 7(C), he has not identified any public interest in the disclosure of this information. *See* Pl.'s Opp. at 3. The Court notes that in his complaint, plaintiff seems to contend that the public has an interest in knowing whether the government prosecuted him and obtained his conviction without disclosing all relevant material to plaintiff. *See* Compl. ¶¶ 14–16. Even if the Court considered this conclusory argument contained

within plaintiff's complaint, the Court finds that the disclosure of identifying information would not improve the public's understanding of how the government operates.  *See Reporters Comm.*, 489 U.S. at 773, 775; *SafeCard Servs.*, 926 F.2d at 1206 (holding "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency engaged in illegal activity, such information is exempt from disclosure").  Therefore, the FBI has justified its invocation of Exemption 7(C), and the Court will grant defendants' motion for summary judgment on the Exemption 6 and Exemption 7(C) withholdings.

### 2.    Exemption 7(D)

Exemption 7(D) states that agencies may withhold:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source[.]

5 U.S.C. § 552(b)(7)(D).  The agency invoking this exemption bears the burden of "showing that the source is a confidential one."  *Citizens for Responsibility & Ethics in Wash. v. DOJ* (*CREW*), 746 F.3d 1082, 1101 (D.C. Cir. 2014), citing *DOJ v. Landano*, 508 U.S. 165, 172 (1993).  The agency must either present evidence "that the source did in fact receive an express grant of confidentiality," *CREW*, 746 F.3d at 1101, quoting *Campbell*, 164 F.3d at 34, or else it must "point to more narrowly defined circumstances that . . . support the inference of confidentiality."  *Id.*, quoting *Roth v. DOJ*, 642 F.3d 1161, 1184 (D.C. Cir. 2011).  The key question "is not whether the requested document is of the type that the agency usually treats as confidential, but whether the

particular source spoke with an understanding that the communication would remain confidential."

*Landano,* 508 U.S. at 172.

Here, the FBI asserted Exemption 7(D) to protect the names, identifying information, and information provided by third party sources to the FBI under an implied assurance of confidentiality. Defs.' Mem. at 11; Hardy Decl. ¶¶ 35, 50–54. The FBI's declarant averred that the "individuals provided valuable, detailed information concerning activities of subjects who were of investigative interest to the FBI," that the information they provided was "unique to the individuals due to their proximity to the criminal elements," and that as a result, "confidentiality can be inferred." Hardy Decl. ¶ 53. Further, he stated that the FBI received information from a local law enforcement agency and that "[i]nherent in this cooperative effort is a mutual understanding that the identities of the local law enforcement agency's sources and the information provided will be held in confidence by the FBI, and not released pursuant to FOIA and Privacy Act requests." *Id.* ¶ 54. He said that cooperation between the FBI and other agencies would greatly diminish, and criminal investigations would be hindered, if this level of confidentiality was not maintained. *Id.*

The Court is satisfied that the FBI has carried its burden in establishing that the sources spoke with the understanding that the communication would remain confidential. Therefore, the FBI has justified its unopposed invocation of Exemption 7(D),[9] and the Court will grant defendants' motion for summary judgment on the Exemption 7(D) withholdings.

---

9       Although plaintiff challenges the invocation of other exemptions, he does not oppose the assertion of Exemption 7(D). *See generally* Pl.'s Opp. at 2–3.

### 3. Exemption 7(F)

Exemption 7(F) permits the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. §§ 552(b)(7)(F). The language of this exemption is "very broad," and covers "any individual." *Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 205 (D.C. Cir. 2014). Moreover, "[d]isclosure need not *definitely* endanger life or physical safety; a reasonable expectation of endangerment suffices." *Id.* (emphasis in original). Courts generally defer to an agency's predictions of harm. *See id.*

Here, the FBI withheld under Exemption 7(F), at times in conjunction with Exemptions 6 and 7(C), the names and identifying information of witnesses or third parties, after determining that the release of this information could reasonably be expected to endanger the life or physical safety of the individuals. Defs.' Mem. at 12; *see* Hardy Decl. ¶ 56. Because the individuals provided information to the FBI concerning the violent criminal activities of plaintiff and his associates, the release of their personal information could make these individuals targets for retaliation by violent criminals. Defs.' Mem. at 13; *see* Hardy Decl. ¶ 56.

Deferring to the agency's prediction of harm that could occur to individuals who provided the FBI with information, the Court concludes that the FBI has justified its unopposed invocation of Exemption 7(F).[10] Therefore, the Court will grant defendants' motion for summary judgment on the Exemption 7(F) withholdings.

---

10 Plaintiff challenges the invocation of Exemption 7(E), despite the government's use of Exemption 7(F). *See* Pl.'s Opp. at 3.

### D.    Segregability

After asserting and explaining the use of particular exemptions, an agency must release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record. *Mead Data Cent., Inc.*, 566 F.2d at 260; *see also Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002). "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although "the agency is not required to provide so much detail that the exempt material would effectively be disclosed." *Johnson*, 310 F.3d at 776, citing *Mead Data Cent., Inc.*, 566 F.2d at 261. Just as with the exemption analysis, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007), citing *Boyd v. Criminal Div. of DOJ*, 475 F.2d 381, 391 (D.C. Cir. 2007), and "[a] court may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008), citing *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). A district court must make an express finding on segregability. *Id.* at 60, citing *Morley*, 508 F.3d at 1123.

The FBI's declarant explained that five documents were released in part, and six were withheld in full, and that the FBI "determined that all of the information on each page was covered by one or more of the cited FOIA exemptions, or determined that any nonexempt information on these pages was so intertwined with exempt material, that no information could be reasonably segregated for release." Hardy Decl. ¶ 57(c). Upon review of the FBI's supporting declaration, including the detailed coding system that the FBI used to guarantee, to the best of its ability, that

the only information withheld is exempt or "so intertwined with protected material that segregation is not possible without revealing the underlying protected material," *see id.* ¶¶ 32–33, 35, the Court concludes that the FBI has met its segregability obligation.

## CONCLUSION

For the foregoing reasons, the Court will dismiss plaintiff's Privacy Act claims against all defendants, and it will dismiss plaintiff's FOIA claim against BOP. With respect to defendants' motion for summary judgment on plaintiff's FOIA claims, the Court will deny the motion in part as to defendants DOJ, EOUSA, and USAO CDIL because the declarations provided to the Court do not describe an adequate search for documents in response to plaintiff's FOIA requests. The Court will remand the case to the agencies to provide a more detailed and clear justification for the adequacy of the searches, and to release any reasonably segregable non-exempt material to plaintiff consistent with FOIA. However, the Court concludes that the FBI conducted adequate searches for documents, properly withheld information pursuant to FOIA Exemptions 6, 7(C), 7(D), and 7(F), and has met its segregability requirement. Therefore, defendants' motion for summary judgment will be granted in part.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: November 2, 2017